**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN LEE SWETALLA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No.  1:13-cv-01652-SKO<br><br>**ORDER ON PLAINTIFF'S COMPLAINT**<br><br>(Doc. No. 19) |

## I.  INTRODUCTION

Plaintiff, Allen Lee Swetalla ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") benefits pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)

## II. FACTUAL BACKGROUND

Plaintiff was born on October 4, 1941, and alleges disability beginning on October 10, 2009. (AR 169-176; 199.) Plaintiff claims he is disabled due to "knees and shoulder pain" and because he "can't get up." (*See* AR 199.)

### A. Relevant Medical Evidence

#### 1. State Agency Consultative Examining Physician

Plaintiff did not submit records from any treating physician with his initial application for benefits, so the state agency ordered an orthopedic examination and x-ray imaging of his knees. (AR 241.) On February 26, 2011, state agency examining physician Dr. Fariba Vesali, M.D., performed a comprehensive orthopedic evaluation, and x-rays of Plaintiff's bilateral knees were taken. (AR 242-48.) The x-rays revealed no joint effusion, satisfactory alignment, well-preserved joint spaces, and no foreign bodies in Plaintiff's bilateral knees. (AR 242-43.) The impression on both knees was "no acute findings" though Plaintiff reported pain and swelling in both knees. (AR 242-43.)

Dr. Vesali noted that Plaintiff complained of gradually worsening pain from an old injury caused to his left shoulder by falling off a truck in the mid-1970's. (AR 244.) Plaintiff also reported gradually worsening pain in his bilateral knees, caused by nonspecific injuries from playing football in the 1960's and 1970's and aggravated by "[g]etting up from bending, walking more than five minutes, and going downhill[.]" (AR 244.) Plaintiff reported that he takes Motrin for his shoulder pain, and "[g]etting off his feet" helps the knee pain "subside." (AR 244.) Plaintiff has not undergone physical therapy for his shoulder pain. (AR 244.)

During the examination, Plaintiff "walk[ed] slowly with no particularly abnormal gait[,]" did not use an assistive device for walking, and "did not have any difficulties [getting] on and off the examination table." (AR 245.) When asked to remove his shoes, Plaintiff "untied his shoes and took them off using both hands showing no difficulties." (AR 245.) Dr. Vesali observed that Plaintiff exhibited full muscle strength in his upper and lower extremities, as well as mild atrophy of the left supraspinatus muscle, and had no pain on motion, tenderness, or obvious inflammation in his left shoulder. (AR 246.) Dr. Vesali did observe tenderness on the bilateral medial joint

space of the knees and crepitus of the knees with flexion/extension, but there was no obvious inflammation in the shoulder joints or bilateral upper and lower extremities. (AR 246.) Plaintiff reported that he lived alone, drives a car, cleans his "space" and does dishes and laundry. (AR 245.) He did not cook or do his own grocery shopping. (AR 245.)

Dr. Vesali diagnosed Plaintiff with chronic bilateral knee pain, probable knee osteoarthritis, and chronic left shoulder pain, left shoulder impingement syndrome. (AR 247.) In his Functional Assessment, Dr. Vesali opined that Plaintiff

> …should be able to walk and stand six hours in an eight-hour day with normal breaks. The limitation is due to bilateral knee osteoarthritis.
>
> He does not need an assistive device for ambulation.
>
> He should be able to lift/carry 50 pounds occasionally and 25 pounds frequently. The limitation is due to chronic left shoulder pain, possibly left shoulder impingement syndrome, possibly left shoulder osteoarthritis.
>
> He should be able to do occasional crouching, kneeling, and crawling. The limitation is due to bilateral knee osteoarthritis.
>
> There is limitation on work that requires overhead activities with the left hand. The limitation is due to decreased range of motion of the left shoulder. Otherwise he should be able to do frequent manipulative activities with the left hand, and there is no limitation on manipulative activities with the right hand.
>
> There are no workplace environmental limitations otherwise.

(AR 247.)

### 2. Case Analyses by Non-Examining State Agency Physicians

On March 24, 2011, state agency consultative physician Dr. P. Frye, M.D., completed a Residual Functional Capacity ("RFC") form during the initial disability determination. (AR 59-78.) He agreed with Dr. Vesali, finding that Plaintiff was able to engage in medium work with postural limitations and occasional overhead reaching of the left upper extremity. (AR 62.)

On June 22, 2011, Dr. J. Frankel, M.D., reviewed the medical evidence on reconsideration. (AR 81-100.) Dr. Frankel noted that Plaintiff had reported his condition was unchanged and presented no additional treatment records. (AR 85.) Dr. Frankel affirmed Dr. Frye's assessment that Plaintiff was able to engage in medium work with postural limitations and occasional overhead reaching of the left upper extremity. (AR 85.)

//

### 3.    Treatment Records from Clinica Sierra Vista

Plaintiff received primary care treatment at Clinica Sierra Vista from August through December 2011[2] for chronic bilateral knee and shoulder pain, diabetes, and hypertension. (AR 249-66.) Providers at the clinic prescribed Vicodin to treat Plaintiff's pain, Allopurinol to treat his elevated uric acid levels, and Amlodipine to treat his blood pressure. (AR 249-66.) He was also prescribed a low-purine diet, and was noted to be "overweight." (AR 259; 260.)

### 4.    Arthritis Questionnaire by Treating Physician

On May 18, 2012, Plaintiff's treating physician Dr. Robert Wolney, M.D., completed an arthritis questionnaire indicating that he had treated Plaintiff for one to two years, opining that he had diagnosed Plaintiff as overweight with diabetes, high blood pressure, arthritis, and gout, and opining that Plaintiff was disabled due to his impairments. (AR 268-71.) Dr. Wolney identified "joint pain, elevated uric acid, elevated blood sugar, [and] weight 322 lbs, 6'2' " as his "clinical findings" supporting his diagnoses, and identified as "objective signs" of impairment Plaintiff's reduced range of motion in all joints, numbness and tingling, joint warmth, joint deformity, joint instability, reduced grip strength, sensory changes, reflex changes, impaired sleep, abnormal posture, tenderness, crepitus, trigger points, redness, swelling, muscle spasm, muscle weakness, abnormal gait, positive straight leg raising, other clinical findings, and fatigue. (AR 268.) "Muscle atrophy" was one of the only three boxes left unchecked on the form. (AR 268.) Dr. Wolney also opined that depression and anxiety were contributing to Plaintiff's symptoms and functional limitations. (AR 268.)

Dr. Wolney listed "bilateral" pain of 8/10 - 9/10 in Plaintiff's "lumbosacral spine, cervical spine, thoracic spine, chest, shoulders, arms, hands/fingers, hips, legs, knees/ankles/feet." (AR 269.) Every possible box was checked on the form, as well as the box opining that Plaintiff's impairments were "*reasonably consistent* with the symptoms and functional limitations described in this evaluation[.]" (AR 269, emphasis in original.) Dr. Wolney opined that Plaintiff's pain was severe enough to constantly interfere with his attention and concentration, but that Plaintiff could

---

[2] Plaintiff's medical record also contains progress notes from June 2008 and January 2012, both of which are marked "failed to show" and do not reflect any sort of treatment or medical opinion. (AR 252; 258.)

tolerate moderate stress. (AR 270.) Dr. Wolney opined Plaintiff needed to use a cane or other assistive device, and needed a job enabling him to shift from sitting to standing at will and permitting him to take frequent unscheduled breaks to lie down with his legs elevated waist high. (AR 271.) In his opinion, Plaintiff could walk only a "1/2 block" without rest or severe pain, and was limited to sitting and stand/walking less than 2 hours total in an 8-hour workday, must walk around every ten minutes, and could only stand for 20 minutes and sit for 10 minutes at one time. (AR 270-71.) Dr. Wolney also checked the box affirming that Plaintiff had "significant limitations with reaching, handling or fingering." (AR 271.) Finally, Dr. Wolney limited Plaintiff to never carry 50 pounds, occasionally carry 20 pounds or less, and frequently carry less than 10 pounds, to only rarely climb stairs and never twist, stoop, crouch/squat, or climb ladders, to only rarely look down, turn head right or left, or look up, and to only occasionally hold his head in a static position. (AR 271.)

**B.     Administrative Hearing**

    **1.     Plaintiff's Testimony**

During the administrative hearing, held by video on July 13, 2011, Plaintiff was accompanied by a disability advocate and testified that he had gout, problems with his knees, and swelling in his legs. (AR 37.) He stated that he had last worked as a ranch manager in 2007 or 2008, and had since taken seasonal work as a "cowboy" that was slow and unsteady, and that he could no longer ride a horse, put on his boots, or get back up from the ground unassisted. (AR 35-37.) Plaintiff testified he lived on a two-and-a-half-acre ranch and cared for his personal needs, cooked meals, cleaned his trailer, split firewood while sitting, and drove on his own the 75 miles into town about once a week. (AR 42; 43; 46.)

    **2.     Medical Expert's Testimony**

Medical Expert Dr. Galst testified at the hearing that Plaintiff had impairments of obesity, diabetes mellitus Type II, and hypertension, but there was "no indication within the medical records that, although these problems are present they are disabling, or substantially or [in] any way restrict his functional abilities." (AR 47.) According to Dr. Galst, while the medical evidence did not support a diagnosis of gouty arthritis or gout, Plaintiff's elevated uric acid level

was indicative of a "propensity for gout." (AR 48.)

Dr. Galst focused on Plaintiff's complaints of bilateral knee and left shoulder pain. He concluded that Plaintiff's knee pain was probably worsened by his obesity, and while the consultative examiner had noted bilateral crepitus on exam, "X-rays of both his left and right knee were obtained and they did not show any abnormalities" and the normal signs and symptoms of active arthritis were not seen. (AR 48-49.) Dr. Galst also reported the consultative examiner's observations of "some very mild atrophy of one [of] the small muscles over the shoulder and that [Plaintiff] had some mild limitation in terms of being able to fully abduct his left shoulder" while emphasizing that Plaintiff is a right-hand dominant individual. (AR 48.)

Dr. Galst opined Plaintiff had "some mild degree of age appropriate arthritis" and his weight "might have some functional bearing." (AR 50.) However, Dr. Galst concluded that Plaintiff did not specifically "meet any muscular skeletal or any other orthopedic listings." (AR 50.) Dr. Galst opined that Plaintiff would have limitations reaching overhead with his left, non-dominant shoulder, but he could lift 50 pounds frequently and 20 pounds occasionally. (AR 51.) He also concluded that Plaintiff "would have a problem riding a horse, which is his past relevant work or his immediate past relevant work." (AR 50.) Dr. Galst further opined that while Plaintiff would not have "substantial limitations" in sitting or standing for several hours at a time or walking a mile or two at a time, he "might have some limitations repeatedly going up and down stairs" and could only occasionally squat. (AR 50.)

### 3. Vocational Expert's Testimony

The ALJ asked the Vocational Expert ("VE") to consider a hypothetical person of Plaintiff's age, education, and with his prior work experience, and Residual Functional Capacity ("RFC") for "medium" exertional work that "would preclude riding a horse; and would limit him to occasional stair climb; and occasional squatting and kneeling; and would limit[ ] him to occasional overhead reaching of the left nondominant arm." (AR 53.) After some discussion between the ALJ, Plaintiff's advocate, and Plaintiff over whether Plaintiff's past relevant work was properly classified at the light or medium exertional level, the VE testified that as those jobs were defined in the Dictionary of Occupational Titles ("DOT"), Plaintiff could not perform any

past relevant work as a ranch hand, DOT code 410.664-010, or a mechanic, DOT code 620.281-050,[3] as they would require more than occasional squatting, kneeling, and overhead reaching. (AR 53-54; 56; 57.)

The VE testified that Plaintiff could perform other medium work, as a hand packager, DOT code 920.587-018, bagger, DOT code 920.687-014, or as a warehouse worker, DOT code 922.687-058, all defined as medium work with an SVP:2.[4] (AR 54.) The VE testified that based on Plaintiff's limitations, jobs as a warehouse worker would be subject to as much as a 50 percent erosion of the work base, to eliminate squatting and kneeling. (AR 54.) When Plaintiff's representative modified the hypothetical to include the limitation that Plaintiff "would have to sit down at will to rest his knees and ankles every 30 minutes," the VE testified that Plaintiff could not perform work as a hand packager, bagger, or warehouse worker. (AR 57.)

**C.  Administrative Proceedings**

On June 21, 2012, the ALJ issued a decision and determined Plaintiff was not disabled. (AR 11-19.) The ALJ found that Plaintiff had severe impairments including osteoarthritis of both knees, degenerative joint disease of the left shoulder, morbid obesity, hypertension, and diabetes. (AR 13.) The ALJ determined these impairments did not meet or equal a listed impairment. (AR 13-14.) The ALJ found Plaintiff retained the RFC "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [he is] precluded from riding a horse; occasional stair climbing, squatting or kneeling; [and] occasional overhead reaching with the left non dominant arm." (AR 14.)

Given this RFC, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 17.) After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were other jobs that existed in significant numbers in the national economy he could perform, including work as a hand packager, bagger, and warehouse worker. (AR 18-19.)

---

[3] Though the ALJ referred to a non-existent DOT code 620.281-051, mechanic, in his decision, it apparently referred to DOT code 620.281-050.
[4] Specific Vocational Preparation ("SVP"), as defined in Appendix C of the Dictionary of Occupational Titles, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

1 The ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from
2 October 10, 2009, the alleged onset date, to the date of the decision. (AR 19.)

**D.     Plaintiff's Complaint**

On July 7, 2014, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues that the ALJ erred by deviating from the DOT without securing a sufficient explanation from the VE, and by failing to evaluate Plaintiff's obesity consistent with Social Security Ruling (SSR) 02-1p. (Docs. 16, 18.)

### III.   SCOPE OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld by a district court if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Davis v. Heckler*, 868 F.2d 323, 325 (9th Cir.1989); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985) (the findings of the Commissioner as to *any* fact, if supported by substantial evidence, are conclusive.) Substantial evidence is more than a mere scintilla, but less than a preponderance. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted); *see also Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (the Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion.") The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by

isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

The role of the Court is *not* to substitute its discretion in the place of the ALJ – "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.2001) (citations omitted); *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."); *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987) (if substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive). The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that

exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In Step 1, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ must determine at Step 2 whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, the ALJ moves to Step 3 and determines whether the claimant has a severe impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is therefore presumptively disabled. *Id.* §§ 404.1520(d), 416.920(d). If not, at Step 4 the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, at Step 5, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

Plaintiff contends the ALJ erred by deviating from the DOT without securing a sufficient explanation from the VE, and by failing to evaluate Plaintiff's obesity consistent with SSR 02-1p.

**A.   The ALJ Erred by Relying on Vocational Testimony that was Inconsistent with the Dictionary of Occupational Titles**

Plaintiff argues the VE's testimony was inconsistent with the DOT, and the ALJ erred by failing to identify and obtain a reasonable basis for the VE's deviation from the DOT and its companion publications. (Doc. 16, 6.) The Commissioner responds that testimony was not inconsistent because Plaintiff has "not been precluded from frequent or constant reaching, he has merely been limited to occasional performance of a subset of reaching[,]" and "[n]othing in the DOT description of the jobs in question indicates that 'reaching' is always 'at or above shoulder level'" or that both arms would be required for overhead reaching. (Doc. 17, 6.)

10

### 1. Legal Standard

In determining whether appropriate jobs exist for the claimant, the ALJ generally will refer to the DOT. *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the DOT. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. *Light*, 119 F.3d at 793; *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p at *2. Thus, the ALJ must first determine whether a conflict exists, and if it does, must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.* at *2-3.

Only after determining whether the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. *Massachi*, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding plaintiff's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. *See Light*, *supra* at 1435 n. 7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); *Terry v. Sullivan*, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context).

### 2. The ALJ Did Not Ask Whether the VE's Testimony Was Inconsistent with the DOT, or, Whether There Was a Reasonable Explanation for the Conflict

SSR 00-4p explicitly requires that the ALJ determine whether the expert's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. At the hearing, the ALJ did not ask whether the VE's opinions were consistent with the DOT, and, if so, whether there was a reasonable explanation for the conflict. (AR 52-58.) Although the VE was

not providing evidence about the "requirements of a job" by stating Plaintiff was qualified for certain jobs in response to the ALJ's hypothetical question, the VE was indirectly providing such evidence. *See* SSR 00–4p at *4 (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT).

### 3. The VE's Testimony Was Inconsistent with the DOT and No Reasonable Explanation for the Conflict was Offered

Unless the VE's testimony actually conflicts with the DOT, by itself the ALJ's failure to explicitly ask whether the VE's testimony was consistent with the DOT is not enough to warrant reversal. *Massachi*, 486 F.3d at 1151 n. 19, 1152-53 (failure to ask whether the VE's testimony is consistent with the DOT is harmless procedural error where there is no actual conflict, or the VE has provided sufficient support for her conclusion so as to justify any potential conflicts). The Commissioner argues there was no conflict between the VE's testimony and the DOT because Plaintiff was never precluded by either the ALJ or any doctor of record "from frequent or constant reaching[.]" (Doc. 17,6 (arguing Plaintiff "has merely been limited to occasional performance of a subset of reaching.").) The Commissioner further contends there was no conflict because "[t]here is no indication that any of these jobs would require Plaintiff to use both arms for overhead reaching." (Doc. 17, 6.)

Contrary to the Commissioner's contentions that "[n]othing in the DOT description of the jobs in question indicates that 'reaching' is always 'at or above shoulder level'" (Doc. 17, 6), the meaning of "reaching" is not indeterminate. Within the meaning of the DOT, "reaching" is defined as "[e]xtending hand(s) and arm(s) in *any* direction." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), Appendix C (1993) (emphasis added). As defined in the SCO, the plain meaning of "reaching" encompasses above-the-shoulder reaching. Contrary to the Commissioner's argument, when considered in light of the SCO and DOT, the VE's testimony implies that Plaintiff was capable of performing jobs that require frequent or constant omni-directional reaching.

Here, the jobs identified by the VE are defined by the DOT as requiring "frequent" or "constant" reaching. This conflicts with Plaintiff's limitation of only "occasional overhead

12

reaching," because "overhead reaching is a specific subset of reaching." *See Carpenter v. Colvin*, No. 1:13-CV-00984-SKO, 2014 WL 4795037, at *8 (E.D. Cal. Sept. 25, 2014); *see also Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); *Pacheco v. Astrue*, No. EDCV 09-1063-CW, 2010 WL 3488215, at *5 (C.D. Cal. Aug. 31, 2010); *Silvera v. Astrue*, No. CV 09-1935-JC, 2010 WL 3001619, at *3 (C.D. Cal. July 29, 2010) (citing *Marshall v. Astrue*, 2010 WL 841252, at *6 (S.D.Cal. Mar.10, 2010)), *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). At a minimum, there is a potential conflict between the VE's testimony about jobs Plaintiff could perform and the DOT description of those jobs, and an explanation of that deviation is necessary. *Id.* (testimony that a claimant limited to occasional overhead reaching can nonetheless perform frequent reaching is the exact type of deviation that should be resolved by explanation from the VE) (citing *Winder v. Astrue*, No. 12-CV-1048, 2013 WL 489611 at *2 (C.D. Cal. Feb. 6, 2013) (same); *Richardson v. Astrue*, 11-CV-1593-SP, 2012 WL 1425130, at *4 (C.D. Cal. Apr. 25, 2012) (reaching in "any" direction plainly encompasses overhead reaching, therefore VE's testimony deviated from DOT and the ALJ was required to obtain "persuasive evidence" to explain the deviation)).

Absent a determination that the VE's explanation for the conflict was reasonable and a basis exists for relying on the VE's conclusions rather than on the DOT, an ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination. *Massachi*, 486 F.3d at 1152-54; *see* SSR 00-4p at *2-3. Here, the ALJ relied on VE testimony that conflicted with the DOT, and the ALJ was therefore required to explain the deviation by making either specific factual findings or drawing inferences from the context of the VE's testimony. *See Light*, 119 F.3d at 793. Instead, the record contains only the VE's conclusion that Plaintiff can perform work requiring "frequent reaching" despite an RFC limiting him to "occasional overhead reaching of the left nondominant arm." "Where an ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs." *Richardson*, 2012 WL 1425130, at * 5. Remand is required to obtain further VE testimony to resolve the inconsistency with the DOT. *Massachi*, 486 F.3d at 1155.

The Court remands this case so the ALJ can apply SSR 00-4p's requirements and

13

determine: 1) whether the jobs identified by the vocational expert are consistent with the definitions in the DOT and Plaintiff's limitations; and, 2) whether there is a reasonable explanation for any inconsistencies between the VE's testimony and the DOT.

**B.   The ALJ Adequately Considered Plaintiff's Obesity throughout the Sequential Disability Analysis**

Plaintiff next contends that the ALJ failed to ask Dr. Galst, the Medical Expert ("ME"), whether Plaintiff's medically determinable impairments, individually or in combination, met or equaled a Listing or further eroded Plaintiff's RFC. (Doc. 16, 9.) Plaintiff argues that the ALJ is required to consider the presence of obesity, and his failure to explicitly discuss SSR 02-1p or explicitly instruct the ME to consider obesity during the hearing constitutes reversible error. (Doc. 16, 9.) The Commissioner contends that both the ALJ and ME adequately considered Plaintiff's obesity. (Doc. 17, 7-8.)

Pursuant to SSR 02-1p, obesity must be considered throughout the sequential evaluation process, including when determining an individual's RFC. "The combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-1p. Here, the record reflects that both the ME and ALJ adequately considered Plaintiff's obesity in compliance with the requirements of SSR 02-1p. For example, the ALJ identified Plaintiff's morbid obesity as a severe impairment at Step 2 (AR 13), noting Plaintiff's weight as 310 and 322 pounds on examination (AR 14-15). Based on his review of the medical evidence, including Plaintiff's obesity in conjunction with Plaintiff's other medically evident impairments, the ME concluded that Plaintiff "does specifically not meet any muscular skeletal or any other orthopedic listings" at Step 3. (AR 50.) The ME further listed Plaintiff's obesity as a reason that Plaintiff "would have a problem riding a horse" and "might have some limitations repeatedly going up and down stairs and squatting[.]" (AR 50.)

Plaintiff's reliance on the Ninth Circuit's decision in *Burch* to support reversal is misplaced. (Docs. 16, 9; 18, 4-5, citing *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).) Contrary to Plaintiff's argument that the Ninth Circuit "requires an exquisite recognition of the [obesity] condition and precise analysis" (Docs. 16, 9; 18, 4) – a position which the Court notes

14

the *Burch* Court never articulated – in this Circuit an "ALJ is *not* required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 682-83 (emphasis added). Here, the ME considered Plaintiff's obesity, in conjunction with Plaintiff's other medically evident impairments, when opining that Plaintiff does not specifically meet any muscular skeletal or any other orthopedic listings. (AR 50.) As such, the ALJ was not required to comprehensively and "exquisitely" discuss the combined effects of Plaintiff's impairments or compare them to any listing in an equivalency determination, to determine that Plaintiff did not meet or equal a Listing. (AR 13-14.)

Plaintiff's entire argument rests on the assertion that the "ALJ and [ME] did not probe into the effects of [Plaintiff]'s obesity and how that impairment further erodes his [RFC]." (Doc. 16, 9.) Contrary to Plaintiff's argument, the ME and ALJ specifically addressed the "functional bearing" of Plaintiff's obesity at the hearing and in the decision, including whether it was "disabling, or substantially or [in] any way restrict[ive of] his functional abilities" (AR 47; *see* AR 16) and whether it worsened or aggravated his bilateral knee pain (AR 48; AR 16). At the final vocational steps of his analysis, after weighing the evidence, the ALJ specifically considered Plaintiff's obesity in making his determinations regarding RFC and vocational ability. (AR 17.) The ALJ found that "due to his *weight* and osteoarthritis in his knees" Plaintiff "would be limited to medium work with occasional postural activities" and that "[d]ue to *weight* and orthopedic issues" Plaintiff "is precluded from riding a horse." (AR 17, emphases added.)

Finally, a review of the medical record reveals little objective evidence of any functional limitations as a result of Plaintiff's obesity that the ALJ failed to consider. *See Burch*, 400 F.3d at 684. The only evidence in the record relating to his obesity are medical notes observing that he is obese and recommending that he lose weight. (*See* AR 259, 260.) Despite complaints of knee pain and a single mention of low back pain, x-rays and examination of Plaintiff's bilateral knees revealed no abnormalities. (AR 16-17; 48; 242-43.) Plaintiff himself has offered no examples specifying how his obesity limits his functional capacity or exacerbates his current existing condition, or showing that he established equivalency to a listing impairment. (*See* Doc. 16, 8-9.)

The ALJ adequately considered Plaintiff's weight at all steps of the sequential disability analysis. *Id.* at 682-84.

In sum, the record demonstrates that both the ME and ALJ adequately considered Plaintiff's obesity to the extent required by SSR 02-1p.

**C.    Remand is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id*. (alteration in original) (internal quotation marks omitted); *see also Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." (citation omitted)). Here, the ALJ erred in relying on the testimony of the VE which is in apparent conflict with the DOT, and remand is appropriate for renewed consideration of this issue.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Allen Lee Swetalla and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **January 5, 2015**                            /s/ Sheila K. Oberto
                                                  UNITED STATES MAGISTRATE JUDGE